IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:21-CR-80-TAV-DCP |
| | ) | |
| TYLER L. SWANSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate.

This matter is before the Court on Defendant's Motion to Suppress [Doc. 18], filed on September 20, 2021, supported by a Memorandum [Doc. 20], filed on September 27, 2021. Defendant moves to suppress evidence found at his residence on October 15, 2020, during the execution of a search warrant, alleging that the affidavit submitted in support of the search warrant contained false statements and omitted material information that is necessary to a finding of probable cause. Defendant requests a *Franks* hearing to show that the affiant either deliberately or with reckless disregard for the truth, made false statements and material omissions in the Affidavit. Defendant also moves to suppress statements he made to law enforcement officials on that same date. The Government filed a response to Defendant's Motion to Suppress on October 11, 2021 [Doc. 23]. The Court held a suppression and evidentiary hearing on October 27, 2021 [Doc. 25]. Assistant United States Attorney Alan S. Kirk and Extern Jason Trautwein appeared on behalf of the Government. Attorney Troy Bowlin II appeared on behalf of Defendant. The

Court set a deadline of November 3, 2021, for Defendant to submit any additional proof for the Court's consideration regarding his prima facie showing on the *Franks* issue and allowed the Government until November 10 to respond. No further filings were submitted.

Accordingly, after reviewing the parties' briefs and arguments, as well as the evidence and exhibit presented at the hearing, and the relevant legal authorities, the Court finds that a *Franks* hearing is not warranted and that law enforcement's questioning of Defendant was not coercive. Thus, it is recommended that Defendant's Motion to Suppress [Doc. 18] be denied.

## I. BACKGROUND AND POSITIONS OF THE PARTIES

This case arises out of the execution of a search warrant at Defendant's residence located at 9448 Lusk Road, Strawberry Plains, Tennessee, on October 15, 2020. Defendant seeks to suppress all evidence seized during the execution of the federal search warrant issued by the undersigned, arguing that the Affidavit of Special Agent James Makemson, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), ("SA Makemson") submitted in support of the search warrant was deficient and contained an intentionally false statement that Defendant was selling silencers, rather than solvent traps[1] [Doc. 18 at 1]. Defendant maintains that SA Makemson "littered" the affidavit with statements describing the items to be seized as silencers rather than solvent traps, which are not illegal to possess [Doc. 20 at 2]. Defendant argues SA Makemson withheld the true identity of the items to be seized and failed to advise in the affidavit that the items could not be used as silencers without extensive modification by someone with specific knowledge [*Id.* at 3]. Thus, Defendant asserts that the affidavit fails to provide probable cause that evidence of a crime will be located on the premises to be searched because possession of solvent traps is not a crime [*Id.* at 4]. Defendant contends that he has made a requisite preliminary

---

[1] The terms "solvent traps" and "fuel traps" are used by the parties, but for the sake of clarity, the Court will use the term "solvent trap" because it is used repeatedly in SA Makemson's Affidavit.

showing that SA Makemson knowingly or recklessly withheld material information or made a false statement in the affidavit, entitling Defendant to a *Franks* hearing [*Id.*].

Defendant also asserts that statements he made at the time of the execution of the search warrant should be suppressed because they resulted from the illegal search and were coerced by the threat of arrest [*Id.* at 5-6]. Defendant argues that law enforcement placed his family in handcuffs and threatened them with arrest in order to coerce Defendant to speak, and thus, the statements he made under such circumstances were involuntary [*Id.*].

The Government responds that Defendant has not met his burden of showing the affidavit supporting the search warrant contains reckless or intentional material omissions or mistakes [Doc. 23 at 2]. The Government maintains that Defendant's assertion that the solvent traps are not or cannot be readily converted into a firearm silencer is not true and that the affidavit establishes probable cause that Defendant was engaged in converting solvent traps into firearm silencers for resale [*Id.* at 3].

With respect to Defendant's statements, the Government asserts that Defendant's claim of coercion is baseless, because Defendant was given a *Miranda* warning prior to his interview and that his statements to the officers were voluntary. The Government maintains that the officers were cordial to Defendant's family and that when Defendant asked the officers to remove the handcuffs from his fiancé, the officers complied with that request [*Id.* at 3-4].

II. ANALYSIS

  A. Probable Cause

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and

3

Case 3:21-cr-00080-TAV-DCP   Document 30   Filed 01/11/22   Page 3 of 14   PageID #: 124

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

An issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)), *cert. denied,* 531 U.S. 907 (2000).  This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* at 238-39 (internal quotation omitted).  In making this determination, the Court considers only the information that was before the issuing judge—in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied,* 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

In the instant case, Defendant argues that SA Makemson's Affidavit does not provide probable cause for the search warrant, because it fails to indicate a fair probability that evidence of a crime would be located at Defendant's residence.  Defendant asserts that it is not illegal to possess solvent traps, and therefore, the Affidavit lacks indicia of the commission of a crime. Defendant also argues that the Affidavit contains deliberately or recklessly false statements and

material omissions regarding the true identity of the solvent traps, entitling him to a *Franks* hearing. In essence, Defendant argues that due to the misleading nature of the Affidavit branding the solvent traps as firearm silencers, he is entitled to suppression of the evidence seized from his home, or for a hearing in accord with *Franks v. Delaware,* 438 U.S. 154 (1978), to determine the sufficiency of the Affidavit.

The Government counters that it is Defendant who is attempting to mislead the Court on the sufficiency of SA Makemson's Affidavit and points to Title 18, United States Code, Section 921(a)(24), which is set out in the Affidavit and states as follows:

> The terms 'firearm silencer' and 'firearm muffler' mean *any* device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, *designed* or *redesigned*, and intended for use in assembling or *fabricating* a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

18 U.S.C. § 921(a)(24) (emphasis added). The Government maintains that SA Makemson's Affidavit establishes probable cause that Defendant was engaged in converting solvent traps into firearm silencers and was engaged in the unlawful selling of such silencers. [Doc. 23 at 3].

*(1) Indicia of Crime*

The Court has reviewed SA Makemson's Affidavit and finds that it clearly establishes the following:

1. On October 1, 2020, SA Makemson seized a package originally intercepted by Customs and Border Patrol ("CBP") and addressed to Defendant at his residence, containing "15 individually packaged, what appeared to be, complete silencer kits." *See* [Doc. 20-1 at 20 ¶5].

2. SA Makemson described the contents of the kits and how the silencer is assembled using the contents. *See* [*Id.* at 21 ¶ 7].

3. On October 1, 2020, one of the sample items was sent to the ATF Firearms & Ammunition Technology Division (FATD) for examination, and on October 6, 2020, FATD determined that the sample item was, in fact, a silencer. *See* [*Id.* at 21-22 ¶ 7 & 9].

5

> 4. Following an undercover agent's contact with Defendant via Facebook Messenger inquiring about a suspected silencer listed for sale on Defendant's Facebook Marketplace page, the agent made an undercover purchase of a silencer from Defendant on October 7, 2020. Details of the conversation between Defendant and the agent are set out, indicating Defendant's intent to be selling silencers rather than solvent traps. *See* [*Id.* at 22 ¶ 8].

Based on the foregoing, SM Makemson concludes that Defendant, a convicted felon, is selling unregistered silencers on Facebook Marketplace, that items advertised on Defendant's Facebook Marketplace page are similar to those taken from the package seized by CBP and submitted to FATD for determination, and that the silencer purchased from Defendant by the undercover agent is listed and pictured in the FATD determination as a silencer. [*Id.* at 22 ¶ 9].

Based on review of the record, the Court finds that probable cause existed for the search of Defendant's residence supported by SA Makemson's Affidavit indicating a fair probability that evidence of Defendant converting solvent traps into firearm silencers and unlawfully selling such silencers would be located on the premises of his residence. While Defendant characterizes the Affidavit as creating a smoke screen to mask the true identity of the items, he does not challenge any of the factual statements—only that there is an insufficient nexus between Defendant and the alleged criminality based on his unsupported assertion that the items were solvent traps and not silencers. The Court's review of SA Makemson's Affidavit, however, establishes probable cause to believe Defendant has violated federal firearms laws.

*(2) Franks Challenge*

Defendant argues that SA Makemson's Affidavit contains false information that masked the true identity of the solvent traps and created a "smoke screen" branding the items as firearm silencers. He contends that absent these false statements, the Affidavit fails to provide probable cause to support the issuance of a search warrant, because it is not a crime to possess solvent traps. The Defendant maintains that he has made a preliminary showing that "[SA Makemson] knowingly and or recklessly withheld and or made false statements in the affidavit" and is thus

6

entitled to a *Franks* hearing. The Government contends, however, that Defendant has failed to carry his burden to identify any material misstatement or omission that would have misled the Court and failed to provide evidence that any such purported statement was done with the intent to mislead the Court.

As previously discussed, the reviewing court's evaluation of whether an affidavit establishes probable cause is typically limited to only the information that was before the issuing judge, i.e., only what is contained within the four corners of the supporting affidavit. *Brooks*, 594 F.3d at 492. "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). The affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171. A defendant seeking a *Franks* hearing, "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Id.*

In *Crawford,* our appellate court described the "two questions of fact, and one of law," upon which "[a] *Franks* analysis turns:"

> The two questions of fact: One, is there a false statement included in an affidavit? If so, then two, how culpable is the affiant officer in including that statement in the affidavit? Where the affidavit does include a false statement, and where the officer making the statement was culpable in doing so, then the court turns to a question of law: After excising the false statement, is there sufficient information in the affidavit to constitute probable cause to issue a warrant?

7

943 F.3d at 309. In assessing an affiant's culpability as part of the analysis, "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant demonstrates "the affiant subjectively entertain[ed] 'serious doubts as to the truth' of his [or her] allegations." *Bateman*, 945 F.3d at 1008 (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)).

Material omissions may also merit a *Franks* hearing in certain circumstances; however, "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Adkins*, 107 F.3d 1213, 1217 (6th Cir. 1997). Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir.), *cert. denied*, 524 U.S. 942 (1998). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Adkins*, 107 F.3d at 1217.

To demonstrate entitlement to a *Franks* hearing, Defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false." *Franks*, 438 U.S. at 170; *see United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (observing that "this court's well-settled framework for *Franks* hearings requires a defendant to 'point to specific false statements.'") (quoting *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990)). Here, Defendant points to

8

one statement in the Affidavit where the term "firearm suppressors" is used [Doc. 20-1 at 18 ¶1] and to four statements where the word "silencer(s)" is used [*Id.* at 18 ¶2, at 20 ¶5 and ¶6, and at 21 ¶7]. He contends that by using these words, SA Makemson withheld the true identity of the solvent traps and branded them as something they were not, i.e., firearm suppressors and silencers, and that his intentions for doing so are clear—he wanted to ensure he obtained a search warrant. Defendant argues that the solvent traps could not be used as silencers without extensive modification by someone with specific knowledge. He states solvent traps only become illegal when modified and asserts he did not modify them.

As previously reviewed, in order to receive a *Franks* hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included in the affidavit . . ." *Franks, supra,* 438 U.S. at 154. "[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks,* 438 U.S. 154, 171. In addition, the court must find that the challenged statements are necessary to a finding of probable cause. *Id.*

Here, while Defendant has identified certain instances where the terms firearm suppressors and silencers were used in the Affidavit, which he claims is inaccurate, he has made no offer of proof establishing the falsity of any statement in SA Makemson's Affidavit, nor explained his failure to do so.[2] Defendant also fails to provide any evidence that SA Makemson acted with intent

---

[2] At the hearing, the Court discussed this lack of proof and extended Defendant additional time to submit an offer of proof for the Court's consideration regarding his prima facie showing on the *Franks* issue. Defendant made no further submission.

9

to mislead the Court. Instead, the only evidence before the Court, the Affidavit, shows that SA Makemson obtained a second opinion, that of FATD, that the items Defendant was selling on Facebook Marketplace were silencers [See Doc. 20-1 at 21 ¶7 & 22 ¶9]. Therefore, the Court finds that Defendant has filed to make the required showing for a *Franks* hearing on the veracity of SA Makemson's Affidavit.

### B. Involuntary Statements

Lastly, Defendant claims the statements he made to law enforcement officials on October 15, 2020, were the product of an unlawful search warrant and of coercion. Because the Court has found that the search warrant was supported by probable cause as discussed above, it need not address Defendant's argument regarding his statements being the product of an unlawful search. As to his claims of coercion, Defendant asserts that his statements were enticed by members of law enforcement placing members of his family in handcuffs and under the threat of arrest. In support of his claim, Defendant submitted an audio recording of the interviews conducted during the execution of the search warrant [Exh. 1].

The Government responds that Defendant's statements were voluntarily made after he received a *Miranda* warning and that while members of Defendant's family were detained during the execution of the search warrant of the residence, the law enforcement officials were cordial and polite to the family members and removed the handcuffs from Defendant's fiancé at Defendant's request.

It is undisputed that Defendant received a *Miranda* warning prior to his interview; however, determining the admissibility of a defendant's statements does not stop with the finding that such warning was given. When a defendant alleges coercion, the Government bears the burden of proving, by a preponderance of the evidence, that a confession was given voluntarily.

*United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir.), *cert. denied,* 546 U.S. 956 (2005). To establish that a confession was involuntary due to police coercion, three elements must be established: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.* (quoting *United States v. Mahan,* 190 F.3d 416, 422 (6th Cir.1999)). When determining whether a confession was involuntary, the court looks at factors such as the defendant's "age, education, intelligence, awareness of rights, length of questioning, and use of physical punishments" to ascertain whether a defendant's will was overborne. *Ostrander*, 411 F.3d at 696; *Mahan*, 190 F.3d at 422 (observing that the court examines the totality of the circumstances for the relevant factors of age, education, intelligence, knowledge of rights, duration of interrogation, and imposition of physical punishment). Our appellate court has recognized that coercion may involve not only physical threats, but psychological threats, and specifically, that threats to arrest a suspect's family member may cause statements to be involuntary. *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993).

The Court has reviewed the audio recording of the interviews of Defendant and Natasha Raines[3] ("Ms. Raines") conducted during the execution of the search warrant [Exh. 1] and finds the recording demonstrates by a preponderance of the evidence that Defendant's statements were in fact voluntary. The Court finds no evidence to support Defendant's contention that his statements were coerced by law enforcement threatening arrest of Ms. Raines.

---

[3] In his motion, Defendant refers to Ms. Raines as his fiancé. During his interview, Defendant refers to her as his wife. During Ms. Raines' interview, she identifies herself as Defendant's girlfriend.

The interview of Ms. Raines begins at approximately the 10:00 mark of the recording.

The following are excerpts of the audio recording, which is approximately sixteen minutes and twenty seconds in duration. At approximately twenty-three seconds into the recording, the following conversation begins:

> SA Makemson: Hey, Tyler, just come on over here. We can talk over here.
>
> Defendant: Sure.
>
> SA Makemson: Okay. Well, I'm just going to read you your rights first, okay, before we start talking about anything.
>
> Defendant: Okay.
>
> SA Makemson: Obviously you are not in handcuffs or anything, but I'm still going to read them to you.
>
> Defendant: Whoa, whoa, whoa, will you please take my wife out of handcuffs, man? She's not a threat.
>
> SA Makemson: We will do that in a second, okay. It's just our protocol to clear everything, okay.
>
> Defendant: I gotcha, man.
>
> SA Makemson: Are you going to give us any problems of any kind?
>
> Defendant: No, man, and she's not either, man. We were ready to go to breakfast.
>
> SA Makemson: Okay, before I ask you any questions, I want to explain your rights to you.

[Exh. 1]. SA Makemson proceeds to read Defendant his rights, completing at the 1:16 mark of the recording. After confirming Defendant understands his rights, SA Makemson asks Defendant if he is now willing to speak with him, and Defendant responds, "If you will take her out of handcuffs, yes. She's probably scared to death." SA Makemson replies, "Okay, we can do that." A female officer then explains to Defendant that she will check his temperature and give him a mask to wear, and Defendant calmly responds, "Sure." SA Makemson is heard asking an officer

12

Case 3:21-cr-00080-TAV-DCP   Document 30   Filed 01/11/22   Page 12 of 14
PageID #: 133

to take the restraints off Ms. Raines and then again explaining to Defendant that handcuffing Ms. Raines was part of the initial protocol to which Defendant responds, "I gotcha." The interview then begins at the 1:48 mark in the recording with SA Makemson explaining the reason law enforcement is there and that the residence will be searched. At no time during the recorded interview is there any threat to arrest Ms. Raines. The law enforcement officials maintain a professional and courteous demeanor throughout the interview, even explaining to Defendant twice that the initial handcuffing of Ms. Raines was part of their protocol to secure the premises for execution of the search warrant. Defendant is also well-mannered and cooperative during the interview. Ms. Raines is uncuffed less than two minutes into the recording.

The Court also finds the other factors do not reveal the Defendant's will was overborne by the officers' conduct. At the time of the execution of the search warrant, Defendant Swanson was thirty years old.[4] Although the Court has no information on Defendant's education, he responded appropriately to SA Makemson's questions and did not seem confused. SA Makemson advised Defendant of his Miranda rights and confirmed he understood those rights. In this regard, the Court notes Defendant has a lengthy criminal history dating back to age sixteen. Thus, the Court finds this was not Defendant's first brush with law enforcement. Finally, the Court finds the interview of Defendant was brief and the record is devoid of evidence that the officers imposed any physical punishment. The Court finds nothing about the circumstances of the statement or the characteristics of Defendant that reveal Defendant was coerced or his will overborne. Accordingly, the Court concludes that Defendant's claim that his October 15 statements were the product of coercion is without merit as there is no indication that he was exposed to coercive

---

[4] The Court has information on Defendant's age and criminal history from his Pretrial Services Report, created on July 1, 2021, in advance of Defendant's initial appearance.

13

interview techniques or questioning tactics, including any threat to arrest Ms. Raines. The undersigned recommends that Defendant's motion to suppress statements be denied.

## III. CONCLUSION

After carefully considering the parties' filings and arguments, the evidence, and the relevant legal authorities, the Court finds no basis to suppress the evidence in this case. Defendant Swanson has failed to make a prima facie showing that the Affidavit in support of the Search Warrant contains false statements or material omissions. Thus, the Court finds that a *Franks* hearing is not warranted. Additionally, the Court finds Defendant's statement to law enforcement was voluntarily and knowingly given and not motivated by coercion. Accordingly, the undersigned respectfully **RECOMMENDS** that the Defendant's Motion to Suppress [**Doc. 18**] be denied.[5]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).